IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-2970-WJM-SKC

AUSTIN CONSULTING GROUP, LLC,

    Plaintiff,

v.

STEPHEN C. GRAVES,

    Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Austin Consulting Group, LLC accuses Defendant Stephen C. Graves of breaching non-solicitation provisions of his employment agreement. (*See* ECF No. 1.) Before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). (ECF No. 2.) The Court previously denied the TRO portion of the Motion and directed a response and reply as to the portion of the Motion that seeks a preliminary injunction. (ECF No. 9; *see also* ECF No. 31.) The Court further stated that upon receiving a response, it would determine whether an evidentiary hearing and/or oral argument on the Motion is necessary. (ECF No. 9.)

The Court has now received a response from Defendant (ECF No. 19) and a reply from Plaintiff (ECF No. 20). Having reviewed the parties' filings, the Court finds that an evidentiary hearing is not necessary to resolve the Motion. For the reasons that follow, the Court denies the preliminary injunction portion of the Motion, and therefore denies the Motion in its entirety.

## I.  BACKGROUND

The parties dispute many of the relevant facts in this case.  (ECF Nos. 2, 19.) However, the Court need not resolve those disputes for purposes of the analysis below. The following allegations, taken from Plaintiff's perspective, are enough to frame the issues.

Plaintiff provides fee-based insurance consulting to customers throughout America, including consulting on risk management policies for automobile dealerships. (ECF No. 2 at 3.)  Among other things, "[i]t develops bid specs for its customers, works with its many relationships to provide the optimal bids for customers, and analyzes the bids to help its customers make the best decisions based on their financial goals."  (*Id.*)

In 2015, Plaintiff's current principals purchased Austin Consulting Group, Inc.; thereafter, in January 2018, Austin Consulting Group, Inc. sold its business to Arthur J. Gallagher U.S. LLC, through its subsidiary Arthur J. Gallagher & Co. ("Gallagher").  (*Id.* at 4.)  As part of this sale, Defendant became a Manager of Consulting Services at Gallagher and entered into an employment agreement on January 22, 2018 (the "Employment Agreement").  (*Id.*)  Under the terms of the Employment Agreement, Defendant is subject to a non-solicitation provision:

> For a period of twenty-four (24) months . . . following the termination of Employee's employment with the Company for any reason whatsoever Employee will not, directly or indirectly, solicit, transfer, place, market, accept, aid, counsel or consult in the placement, renewal, discontinuance or replacement of any insurance (including self-insurance) by, or handle self-insurance programs, insurance claims, risk management services, emergency or disaster prevention or management services, or other insurance administrative or service functions ("insurance services") or provide employee benefit brokerage, consulting, or administration services; in the area of group insurance, defined benefit and defined

> contribution pension plans, individual life, disability and capital accumulation products; investment advisory services, wealth management, or group retirement services; defined benefit and defined contribution pension services; human resources consulting services, including, without limitation, compensation consulting, compensation program design, compensation and benefits surveys, and on-site human resources management; and all other employee benefit areas the Company is involved with ("benefit services"), for: (x) any Account of the Company for which Employee performed any of the foregoing functions during any part of the two-year period immediately preceding such termination (referred to hereinafter as "Protected Accounts"), or (y) any Prospective Account of the Company (as defined below).

(*Id.* at 5; ECF No. 1-1 at 7–8.)

On March 1, 2021, Gallagher sold the business to Plaintiff, including the assets and insurance business that Gallagher had previously purchased from Austin Consulting Group, Inc. (ECF No. 2 at 5–6.) As part of this sale, Plaintiff purchased Gallagher's book of customers and was assigned the Employment Agreement executed by Defendant. (*Id.* at 6; ECF No. 1-2.)

Defendant thereafter entered into an Independent Contractor Agreement with Plaintiff that extended from March 1, 2021 to June 1, 2021. (ECF No. 1-2.) Plaintiff agreed to pay Defendant a monthly fee, and Defendant agreed, *inter alia*, that he is "still subject to the post-termination provisions of the [Employment Agreement] including the restrictive covenants contained therein restricting his use of Confidential Information (as defined therein) and restricting his post-termination activities regarding solicitation and competition." (*Id.* at 1.)

Plaintiff asserts that Defendant (as Manager of Consulting Services) had access to confidential information regarding every customer and continued to service many of Plaintiff's customer accounts, thus continuing to build the goodwill purchased by

3

Plaintiff.  (ECF No. 2 at 7–8.)

Plaintiff asserts that after Defendant's Independent Contractor Agreement concluded on June 1, 2021, Defendant "began a new company in direct competition with [Plaintiff] and stole its clients in blatant violation of his binding restrictive covenants."  (*Id.* at 9.)  It asserts that "[u]pon information and belief, [Defendant] solicited and/or accepted [Plaintiff's] customers through his own business, SCG Enterprise Group, a company which directly competes with [Plaintiff], offering insurance consulting services to automobile dealerships."  (*Id.*)  It further contends that it "has had at least 25 [c]ustomer [a]ccounts terminated by customers serviced by Defendant" and that the associated loss of business is more than $260,000.  (*Id.* at 10.)

Plaintiff filed this action on November 4, 2021, asserting that Defendant breached the Employment Agreement.  (ECF No. 1.)  On the same day, Plaintiff filed the Motion, which requests that Defendant be enjoined and restrained from: soliciting any of Plaintiff's customer accounts for 19 months; and disclosing, making use of, or exploiting Plaintiff's confidential information and trade secrets.  (ECF No. 2; ECF No. 2-2.)

## II.  LEGAL STANDARDS

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal.  *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The Tenth Circuit previously endorsed an alternate standard that relaxed the likelihood of success requirement when the other three factors tipped strongly in the movant's favor.  See, e.g., Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1113 (10th Cir. 2006).  The Tenth Circuit abrogated this standard in 2016, announcing that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  Diné Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1282 (10th Cir. 2016).

Although the Tenth Circuit has abrogated its relaxed standards, the Tenth Circuit continues to endorse a heightened standard for "[d]isfavored preliminary injunctions," which do not

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

Free the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted).

Given that the Court's analysis below turns on the irreparable harm element, the Court need not decide whether Plaintiff requests a disfavored preliminary injunction.

### III.  ANALYSIS

Among the preliminary injunction elements, "a showing of probable irreparable harm is the single most important prerequisite."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted) ("Dominion Video II").  "A plaintiff suffers irreparable injury when the court

would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) ("*Dominion Video I*"). Irreparable harm "must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

The Motion spends eight pages on likelihood of success (ECF No. 2 at 13–20), but then devotes only four paragraphs to irreparable harm (*id*. at 20–22). Plaintiff argues that it will suffer "irreparable harm to its goodwill and customer relationships if [Defendant] is not enjoined" as Defendant "is currently using and disclosing [Plaintiff's] trade secret[s] to solicit and engage competitors in the insurance industry." (*Id.* at 21.) It argues that it will have "great difficulty valuing the damages it suffers from [Defendant's] continued violation of his restricted covenants and his contact of numerous" customers belonging to Plaintiff, thus warranting injunctive relief. (*Id.* at 21–22.) Plaintiff further argues that it is entitled to injunctive relief because Defendant acknowledged in the Employment Agreement that injunctive relief is an appropriate remedy for breaches of Defendant's post-employment obligations. (*Id.* at 20; *see also* ECF No. 2-1 at 6 ("Accordingly, in addition to any other remedy the Company may have at law or in equity, the Company will be entitled to enforce this Agreement by obtaining a temporary restraining order and preliminary and permanent injunctive relief to restrain any such breach or further breach by Employee.").)

The Court is unable to find that these harms are irreparable harms warranting injunctive relief. While Plaintiff asserts that Defendant's breaches of his Employment Agreement are harming Plaintiff's goodwill and customer relationships, "the Court may

not presume irreparable harm simply because this case involves a noncompete covenant, trade secrets, or the like." *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1130 (D. Colo. 2017).  Even before *Diné Citizens*, the Tenth Circuit rejected any automatic presumption of irreparable harm:

> Despite the general acknowledgment that irreparable harm often arises from the breach of [an exclusivity] agreement, courts do not automatically, nor as a matter of course, reach this conclusion.  Rather, they examine whether the harms alleged by the party seeking the preliminary injunction are in fact irreparable, and sometimes conclude in the negative.

*Dominion Video II*, 356 F.3d at 1263.

At bottom, the harm Plaintiff allegedly faces is the possibility that Defendant will secure contracts that he would not have otherwise secured at Plaintiff's expense and in breach of Defendant's obligations under the Employment Agreement.  *If* that happens, damages are calculable: Defendant should pay to Plaintiff what Plaintiff would have earned on those contracts.  The Court concludes that because Plaintiff's potential losses can be compensated by monetary damages, they do not qualify as irreparable harm warranting an injunction.  *See Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (recognizing that party seeking injunction "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages"); *Salt Lake Tribune Publ'g Co.*, 320 F.3d at 1105 ("Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise.").[1]  Moreover, on the facts of this case, the Court cannot

---

[1] Plaintiff repeatedly argues that that Defendant is harming its goodwill and that these harms cannot be compensated by money damages.  (ECF No. 2 at 21; ECF No. 20 at 9.)  However, the Court notes that aside from Plaintiff's allegations that Defendant is luring away Plaintiff's customers (which is ultimately compensable through money damages), Plaintiff has not demonstrated how its goodwill is being irreparably harmed.  For example, Plaintiff does not

7

conclude that the potential difficulty of calculating monetary damages is a basis for irreparable harm.[2]

Likewise, the contractual language of the Employment Agreement, without more, is insufficient to support a finding of irreparable harm.  *See Dominion Video Satellite II*, 356 F.3d at 1266 (recognizing that contractual statements regarding the nature of the harm resulting from a breach of contract "alone are insufficient to support a finding of irreparable harm and an award of injunctive relief"); *Email on Acid, LLC v. 250ok, Inc.*, 2020 WL 364562, at *3 (D. Colo. Jan. 22, 2020) ("[P]arties to a contract cannot, by including certain language in [a] contract, create a right to injunctive relief where it would otherwise be inappropriate.").

Thus, Plaintiff's motion fails on its face to demonstrate a sufficient likelihood of irreparable harm, and the Court need not examine the remaining elements of the preliminary injunction test.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that the preliminary injunction portion of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is DENIED, and so the motion is DENIED in its entirety.  Not later than **December 2, 2021,** the parties shall jointly contact the Chambers of

---

assert that Defendant is damaging Plaintiff's reputation or industry goodwill writ large.  (*See* ECF Nos. 2, 2-1.)

[2] Indeed, the Court questions whether the task of calculating damages is as onerous as Plaintiff asserts.  The Court notes that Plaintiff has already determined that 25 of its customers have moved their business to Defendant's company and that the annual revenue from these customers is more than $260,000.  (ECF No. 2-1 ¶¶ 66–68, 71.)

Magistrate Judge S. Kato Crews to schedule a Scheduling Conference, or such other proceeding that Judge Crews deems appropriate to move this action forward.

Dated this 30th day of November, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge